## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Nadia Jackson,

Civ. No. 10-2370 (JRT/JJG)

Plaintiff,

v.

REPORT AND RECOMMENDATION

Metropolitan Council HRA
Management Association,

Defendant.

JEANNE J. GRAHAM, United States Magistrate Judge

This matter is before the Court on Defendant's First Motion for Summary Judgment (ECF No. 83). The Honorable John R. Tunheim, United States District Judge, referred this matter for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and District of Minnesota Local Rule 72.1(b). Plaintiff Nadia Jackson appeared pro se. Mary G. Dobbins appeared on behalf of Defendant Metropolitan Council HRA Management Association ("Metro HRA"). Based on the following, the Court recommends that Defendant's First Motion for Summary Judgment be granted.

Plaintiff alleges twelve causes of action against Metro HRA. Before identifying individual, specific causes of action, Plaintiff includes a general "Count One, Charge of Discrimination," without any factual allegations or assertions of discrimination, followed by "Complaint One." (Am. Compl. at 1, Oct. 3, 2011.) In "Complaint One," Plaintiff alleges "Negligence/Defamation libel slander."[1] (*Id.* ¶ 1.) In Count Two,[2] Plaintiff alleges a violation of

_____

[1] Many of Plaintiff's claims are ambiguously titled. To the extent possible, the Court construes Plaintiff's individual causes of action broadly. Because many of the causes of action

42 U.S.C. § 1437f(5)(a).  Section 1437f generally deals with the implementation of the low-income housing assistance programs, but the subsection specifically cited does not exist.  In Count Three, Plaintiff alleges a violation of 42 U.S.C. § 2000d, which prohibits discrimination under federal programs.  In Count Five,[3] Plaintiff alleges a violation of 42 U.S.C. § 2000d and Section 601 of Title VI of the Civil Rights Act of 1964, which also prohibits discrimination based on race, among other things.  In Count Six, Plaintiff alleges a violation of Title VI of the Civil Rights of 1964, 42 U.S.C. § 2000d-1 through § 2000d-7, all of which deal with some brand of discrimination and enforcement of the Civil Rights Act.  In Count Seven, Plaintiff alleges a violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.  In Count Eight, Plaintiff alleges a violation of the "Civil Rights 1968 Fair Housing & Equal Opportunity Act," 42 U.S.C. § 3601, *et seq.*  In Count Nine, Plaintiff alleges negligence and discrimination. In Count Ten, Plaintiff alleges "Negligence, Discrimination Complaints" based on the Section 8 regulations.  In Count Eleven, Plaintiff alleges conspiracy against rights, criminalized by 18 U.S.C. § 241.  In Count Twelve, Plaintiff alleges a violation of 42 U.S.C. § 3544, which has the goal of preventing fraud and abuse in housing and urban development programs.  In Count Thirteen, Plaintiff alleges civil rights violations under 42 U.S.C. § 1983.

At the outset, it is incumbent on the Court to address some threshold issues.  While pro se plaintiffs are entitled to latitude with regard to construction of pleadings, *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004), such extra consideration is not without limit.  Indeed, a court

---

revolve around alleged discriminatory actions, and Plaintiff did not follow "Charge of Discrimination" with any legal or factual assertions, the Court defers its analysis of alleged discriminatory actions to other counts.

[2] After "Complaint One," Plaintiff classifies her causes of action as "Count XX."

[3] The Amended Complaint does not include a "Count Four."

may not "supply additional facts [or] construct a legal theory" for pro se parties. *Id.* (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)) (omission in original).

Further, the Court notes Plaintiff's relative experience with the civil justice system and acknowledges that Plaintiff was regularly well-prepared for motion hearings. In recognition of Plaintiff's pro se status, and despite her relative aptitude, the Court granted Plaintiff numerous extensions. (*See, e.g.*, Order, Sept. 20, 2011, ECF No. 58 (considering an untimely opposition to Defendant's motion to compel); Order, Sept. 30, 2011, ECF No. 64 (allowing Plaintiff to file an amended complaint despite failing to do so promptly, as ordered on August 4, 2011).)

Moreover, the Court routinely accepted exhibits from Plaintiff at motion hearings and despite their apparent inauthenticity. (*See, e.g.*, Minute Entry, Feb. 24, 2011, ECF No. 32 (admitting exhibit in opposition to motion to dismiss); Minute Entry, June 24, 2011, ECF No. 43 (accepting Plaintiff's Rule 23(f) report concurrent with Rule 16 Pretrial Conference); Minute Entry, March 1, 2012, ECF No. 93 (accepting Plaintiff's exhibits at hearing on this motion).)

## I. Factual Background

Defendant is a public housing authority ("PHA") that administers the Section 8 Housing Choice Voucher Program ("Section 8 Program"). (Affidavit of Beth Reetz ("Reetz Aff.") ¶ 2.) Defendant has a waitlist of three to seven years for participation in the Section 8 Program. (*Id.* ¶ 43.) Plaintiff was a participant in that program from 2003 to 2007. (*Id.* ¶ 2.) Once a family is approved for participation, the PHA issues a voucher enabling the family to search for a unit. *See* 24 C.F.R. § 982.502. After locating a unit, the program participant and the landlord submit a "Request for Tenancy Approval" ("RTA"). After processing the RTA, the PHA may enter into a Housing Assistance Payments Contract ("HAP contract") with the future landlord. *See* 24 C.F.R. § 982.305; 24 C.F.R. § 982.507. A PHA is required by federal regulation to recertify

each participant at least once yearly.  *See* 24 C.F.R. § 982.516(a) ("The PHA must conduct a reexamination of family income and composition at least annually.").

Defendant first began assisting Plaintiff with housing costs on July 1, 2005 by entering into a HAP contract with Thomas Grant, Sr.[4] (Reetz Aff. Ex. A.)  Defendant modified the HAP contract as rental rates varied; the last of such modifications was entered on October 1, 2006 and was indefinite in nature.  (Reetz Aff. ¶ 3; Reetz Aff. Ex. B.)  Plaintiff executed a "Recertification Information Sheet" ("RI Sheet") on April 6, 2007 and answered "No" on the sheet when asked whether she was giving notice to move.  (Reetz Aff. Ex. C.)  In signing the RI Sheet, Plaintiff also acknowledged three things:

- I understand **I must notify the owner and at the same time notify the HRA <u>in writing</u> before moving out of my rental unit**

- I understand notice must be in accordance with the lease and <u>must be submitted to the HRA in writing</u> at least **<u>60</u> days prior to the move-out** (this applies even if I am moving to another unit in the same building or complex)

- I understand that if I move out without giving proper notice to the owner, my Section 8 Rental Assistance <u>will be terminated.</u>

(Reetz Aff. Ex. D (emphasis in original).)  Because Plaintiff did not indicate an intent to move, Defendant processed her recertification accordingly.  (Reetz Aff. ¶ 7.)

Plaintiff notified Defendant on May 23, 2007 by telephone that she was considering moving to Illinois; Defendant responded by notifying Plaintiff of the sixty-day requirement and asking for notice in writing.  (Reetz Aff. Ex. E.)  Defendant did not receive any written notice regarding Plaintiff's intent to move.  (Reetz Aff. ¶ 8.)  On June 15, 2007, Mr. Grant, Sr. notified Defendant that Plaintiff had vacated the rental unit.  (Reetz Aff. Ex. E.)  Based on that telephone

---

[4] Plaintiff alleged, for the first time at the hearing on this motion, that Thomas Grant, Sr. was the property manager, and Thomas Grant, Jr. was the owner.

call, Defendant terminated Plaintiff's assistance.  (Reetz Aff. Ex. F.)  Plaintiff asserts she did not

move out on June 15, but on June 30, 2007.[5]

After notifying Plaintiff of the decision to terminate her housing assistance, Defendant

held an informal hearing before Hearing Officer Wendy Haugen.  (Reetz Aff. ¶ 11.)  Haugen

upheld the decision to terminate assistance.  (Reetz Aff. Ex. H.)  Rather than appealing the

decision, Plaintiff sent numerous letters to Defendant, causing Beth Reetz, Defendant's Manager,

to agree to a personal meeting with Plaintiff.  (Reetz Aff. ¶ 15.)  Following the meeting,

Defendant immediately reinstated Plaintiff's Section 8 Program assistance.  (*Id.*)  That day,

Plaintiff completed an RI Sheet.  (*See* Reetz Aff. Ex. I.)  On that sheet, Plaintiff did not disclose

any income other than assistance from the Minnesota Family Investment Program ("MFIP").

(*Id.*)  Plaintiff answered "No" when asked on the RI Sheet whether "[Y]ou or any member of

your household worked in the last twelve months."  (*Id.*)  In signing the RI Sheet, Plaintiff made

the following acknowledgements:

- I certify that all information I have given on this form is complete and accurate.

- I have listed all members of the household and all sources of income and assets, earned and unearned, for all members of my household.

- I understand that <u>providing false information will result in the termination of my Section 8 rent assistance</u>.

(*Id.*) (emphasis added).  Plaintiff also signed Defendant's "Statement of Responsibilities,"

certifying "that the information given to the Metro HRA on household composition, income, net

family assets and allowances and deductions is accurate and complete to the best of my

knowledge and belief."  (Reetz Aff. Ex. J.)  Defendant issued a 120-day voucher, which was set

---

[5] This discrepancy does not create a genuine issue of material fact.  Regardless of whether Plaintiff moved out on June 15, 2007 or June 30, 2007, Plaintiff failed to provide sixty days' notice and failed to provide written notice.  Even crediting Plaintiff's version of the facts, she gave, at most, thirty-eight days' notice.

to expire on July 1, 2008.  (Reetz Aff. ¶ 19.)  Shortly thereafter, Plaintiff requested her voucher be "ported," or transferred, to Georgia, which Defendant facilitated.  (Reetz Aff. ¶ 20.)  Soon after she requested a port, Plaintiff requested her voucher be ported back to Minnesota, which Defendant facilitated.  (Reetz Aff. ¶ 20.)  Plaintiff did not find suitable housing within the 120 days, so Reetz extended Plaintiff's voucher by 112 days.  (Reetz Aff. ¶¶ 22, 23.)  Plaintiff acknowledged that Defendant would not give any further extensions.  (Reetz Aff. Ex. L.)

In August 2008, Defendant received an RTA from Rebecca Merdan seeking approval to rent to Plaintiff.  (Reetz Aff. ¶ 26.)  Defendant's Housing Coordinator Crystal Sheppeck contacted Merdan to negotiate a lower rental rate.  (Reetz Aff. Ex. N.)  In response, Merdan questioned why the rent was too high given Plaintiff's self-employment income.  (*Id.*)  Merdan faxed a copy of a portion of Plaintiff's Federal Income Tax Form 1040 for 2007 to Defendant, which included $19,926 of net income to Plaintiff for "Hairdressing."  (Reetz Aff. Ex. O; Reetz Aff. Ex. N.)  Defendant claims, and Plaintiff has not disputed, that the hairdressing income was not reported to Defendant.  (Reetz Aff. ¶ 17, 28.)  In related litigation in the Minnesota state court, Plaintiff produced a "Tax Return Transcript" confirming the unreported income. (Affidavit of Mary Dobbins ("Dobbins Aff.") Ex. K.)

Due to Plaintiff's inaccurate income reporting, Sheppeck recommended termination of Plaintiff's housing assistance.  (Reetz Aff. Ex. Q.)  Plaintiff requested an informal hearing to challenge her termination; the hearing was scheduled for October 24, 2008.  (Reetz Aff. Ex. R; Reetz Aff. Ex. S.)  Plaintiff sent a "formal complaint" to Defendant on September 30, 2008 stating, "I am not interested in a voucher any longer and will be with drawing my request hearing [sic] dated 10/24/2008."  (Reetz Aff. Ex. T.)  Defendant responded by confirming the cancellation.  (Reetz Aff. Ex. U.)  Plaintiff denied rescinding her hearing request.  (Reetz Aff.

Ex. V.)  Defendant reinstated the October 24, 2008 hearing date.  (Reetz Aff. Ex. W.)  Plaintiff

did not appear for the informal hearing, nor did she ask that it be rescheduled.  (Reetz Aff. ¶ 37.)

On February 29, 2008, Plaintiff notified Defendant that she considered herself disabled.

(Reetz Aff. ¶ 40.)  In an effort to verify the disability, Defendant contacted Plaintiff's physician,

but did not receive a response.  (*Id.*)  Plaintiff notified Reetz that Plaintiff applied to receive

Supplemental Security Income ("SSI"), but Defendant never received further information

concerning that application.  (*Id.*)

Plaintiff sued Defendant in Hennepin County District Court.  (Dobbins Aff. Ex. A.)  The

Honorable Janet Poston granted summary judgment in Defendant's favor on all claims.  *Jackson*

*v. Metro. Council HRA* (*Jackson I*), 27-CV-09-7012 (Minn. Dist. Ct. Mar. 3, 2010) (summary

judgment order).  Plaintiff untimely appealed Judge Poston's order, and the Minnesota Court of

Appeals accordingly dismissed the appeal.  *Jackson v. Metro. Council HRA* (*Jackson II*), A10-

801 (Minn. Ct. App. June 1, 2010).

## II.     Discussion

A court should grant summary judgment where there are no genuine issues of material

fact and the moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed.

R. Civ. P. 56.  A court may not grant summary judgment if there is a genuine issue of material

fact.  *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).  A fact is material if

it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it

could lead a reasonable jury to return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986).  The Court must view all reasonable inferences in the light most

favorable to the nonmoving party.  *Enter. Bank*, 92 F.3d at 747.

While both the burden of showing there is no genuine issue of material fact and that it is entitled to judgment as a matter of law is on the moving party, *id.*, the nonmoving party "must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial." *3M Co. v. Intertape Polymer Grp., Inc.*, 423 F. Supp. 2d 958, 961 (D. Minn. 2006) (Tunheim, J.) (citing *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)) (other citations omitted). A court exercising diversity or supplemental jurisdiction over state law claims applies state substantive law. *Firstcom, Inc. v. Qwest Commc'ns*, 618 F. Supp. 2d 1001, 1010 (D. Minn. 2007) (citation omitted).

## A.     Plaintiff's Opposition

Plaintiff's opposition to this motion does not dispute, or even mention, any of the facts offered in Defendant's Memorandum in Support of Summary Judgment or any facts in the record. Plaintiff's opposition consists primarily of two theories. First, Plaintiff contends that Defendant and, more specifically, Beth Reetz and Mary Dobbins, counsel for Defendant, committed perjury by submitting an affidavit Plaintiff asserts was improperly signed and notarized. Second, Plaintiff asserts a procedural error occurred in the June 2007 termination of benefits because Defendant entered into a HAP contract with Thomas Grant, Sr., not Thomas Grant, Jr. Plaintiff argues the notification from Mr. Grant, Sr. was insufficient to form the basis for terminating her rental assistance and that the HAP contract was void because it was not between Defendant and the property owner, but rather was between Defendant and the property manager, the property owner's agent.

To begin, the Court is satisfied that Defendant's affidavit is sufficiently authenticated. The Electronic Case Filing Procedures established by this District require electronically-filing parties to signify a signature using "s/ *Name*." Electronic Case Filing Procedures Guide 10-11.

8

Defendant did not, however, electronically designate notarization on the Affidavit of Beth Reetz. Accordingly, Defendant is directed to re-file the Affidavit of Beth Reetz within 30 days of this Order.  Second, the information received from Thomas Grant, Sr. instead of Thomas Grant, Jr. was valid information.  That it came from the manager-father and agent, rather than the owner-son, is immaterial.  *See* Restatement (Third) of Agency § 1.01 (definition of agency).  The discrepancy it is not a "genuine issue of material fact" and thus not a bar to summary judgment.

Plaintiff has not identified any disputes of material fact, nor did she provide her own version of the facts for the Court to compare with Defendant's recitation.  After reviewing Defendant's summation of the facts, the Court concludes that it is consistent with the record. The burden of establishing factual disputes is on Plaintiff, not Defendant or the Court.  *See Bennett v. Dr. Pepper/Seven Up, Inc.*, 295 F.3d 805, 808 (8th Cir. 2002) (requiring pro se litigant to meaningfully oppose a motion for summary judgment).  Indeed, the *Bennett* court reasoned that even pro se litigants are "required to respond . . . with specific factual support" to avoid summary judgment.  *Id.* (citing *Beck v. Skon*, 253 F.3d 330, 333 (8th Cir. 2001).  Finally, the court determined that courts are not bound to search the record for such facts.  *Id.* at 809*; see also Barge v. Anheuser-Busch, Inc.*, 87 F.3d 256, 260 (8th Cir. 1996) (acknowledging that a court deciding a motion for summary judgment has no "affirmative obligation to plumb the record in order to find a genuine issue of material fact").  Accordingly, the Court will rely exclusively on the facts provided by Defendant and supported by the record.

### B.    Precluded Claims

Before addressing individual claims, the Court must determine whether Plaintiff's claims are precluded, either statutorily or by the doctrine of res judicata.

1. **Statutory Preclusion**

Defendant first argues summary judgment is appropriate based on Plaintiff's failure to exhaust her administrative remedies fully.  A PHA may terminate assistance "if the family violates any family obligations under the program" enumerated in 24 C.F.R. § 982.551. 24 C.F.R. § 982.552(c)(1)(i).  Participant obligations include, *inter alia*, giving notice before moving out of a unit or terminating a lease on notice to the owner, § 982.551(f), and supplying required information including information in connection with "a regularly scheduled reexamination or interim reexamination of family income and composition," § 982.551(b)(2). The information supplied must be true and accurate. § 982.551(b)(4).  Further, a PHA must offer an informal hearing whenever the PHA "terminate[s] assistance for a participant family because of the family's failure to act" under § 982.552.  24 C.F.R. § 982.555(a)(1)(v).

In conducting this type of hearing, Defendant acts in a "quasi-judicial" capacity.  *Cole v. Metro. Council HRA*, 686 N.W.2d 334, 336 (Minn. Ct. App. 2004).  The appropriate appeal of a quasi-judicial decision lies with the Minnesota Court of Appeals.  *Dietz v. Dodge County*, 487 N.W.2d 237, 239-40 (Minn. 1992) (citing *Dokmo v. Ind. Sch. Dist. No. 11*, 459 N.W.2d 671, 677 (Minn. 1990)).  Absent statutory or appellate rules to the contrary, the Minnesota Court of Appeals is the exclusive remedy for challenges to quasi-judicial agency decisions.  *Mowry v. Young*, 565 N.W.2d 717, 719 (Minn. Ct. App. 1997) (quoting *Heideman v. Metro. Airports Comm'n*, 555 N.W.2d 322, 323 (Minn. Ct. App. 1996)) ("Unless a statute expressly vests judicial review of an agency action in the district court, the court of appeals has exclusive jurisdiction over writs of certiorari."); *see also Naegele Outdoor Adver., Inc. v. Minneapolis Cmty. Dev. Agency*, 551 N.W.2d 235, 236 (Minn. Ct. App. 1996).

Here, Defendant terminated Plaintiff's assistance in June 2007 based on information that she had vacated her rental unit without complying with the notification requirements contained in her Statement of Responsibilities.  Defendant terminated Plaintiff's assistance in 2008 based on Plaintiff's unreported income.  In both instances, Defendant complied with its duty under § 982.555 by offering Plaintiff a hearing.  Plaintiff attended the hearing following the 2007 termination and did not appeal the administrative decision.  Plaintiff did not attend the hearing following the 2008 termination.

Following the informal hearings, Plaintiff's further review was vested not in the Minnesota state district court, but in the Minnesota Court of Appeals.  Minn. Stat. § 480A.06, subd. 4 ("The Court of Appeals shall have jurisdiction to review . . . the decisions of administrative agencies . . ."); *see also Mowry*, 565 N.W.2d at 719.  Nor may plaintiffs relitigate the facts or merits of the termination of Section 8 benefits in federal court.  *See Loving v. Brainerd Hous. & Redev. Auth.*, Civ. No. 08-1349 (JRT/RLE), 2009 WL 294289, at *5 (D. Minn. Feb. 5, 2009) (citing *Gammons v. Mass. Dep't of Hous. & Cmty. Dev.*, 523 F. Supp. 2d 76, 86 (D. Mass. 2007)).

Accordingly, the proper method of challenging the termination of Plaintiff's housing assistance was through the Minnesota Court of Appeals.  This complaint could certainly be construed to challenge the merits of Defendant's termination of Plaintiff's benefits.  Thus, insofar as Plaintiff challenges the merits of the termination of her housing assistance, summary judgment is appropriate, since claims relitigating the merits of her termination are not properly before this Court.

### 2.    Res Judicata

Defendant next argues that each claim in Plaintiff's complaint is barred by the doctrine of res judicata. Federal courts are required "to give preclusive effect to state-court judgments whenever the court of the State from which the judgments emerged would do so." *Allen v. McCurry*, 449 U.S. 90, 96 (1980); *see also* The Full Faith and Credit Act, 28 U.S.C. § 1738. Minnesota courts apply the doctrine of res judicata when "(1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privities; (3) there was a final judgment on the merits; [and] (4) the estopped party had a full and fair opportunity to litigate the matter." *Brown-Wilbert, Inc. v. Copeland Buhl & Co.*, 732 N.W.2d 209, 220 (Minn. 2007).

Plaintiffs must assert "all alternative theories of recovery in the initial action." *Dorso Trailer Sales, Inc. v. Am. Body & Trailer, Inc.*, 482 N.W.2d 771, 773-74 (Minn. 1992). Indeed, once there is a final adjudication on the merits, a party may not relitigate claims arising from the same set of circumstances, even under new or alternative theories. *Wilson v. Comm'r of Revenue*, 619 N.W.2d 194, 198 (Minn. 2000). This absolute bar applies to "not only claims as to matters actually litigated, but also as to every matter that *might have been litigated*." *Id.* (emphasis in original) (citing *Care Inst., Inc.-Roseville v. County of Ramsey*, 612 N.W.2d 443, 445 (Minn. 2000)); *see also Hauschildt v. Beckingham*, 686 N.W.2d 829, 840 (Minn. 2004) ("Res judicata applies not only to all claims actually litigated, but to all claims that could have been litigated in the earlier action."). Courts consider whether the same evidence would be used in subsequent litigation as a litmus test for determining whether certain claims are barred by former judgments. *McMenomy v. Ryden*, 148 N.W.2d 804, 807 (Minn. 1967).

The Court concludes that Minnesota courts would give Plaintiff's state court action preclusive effect and bar the claims currently before the Court.   There is no question that the earlier cause of action involved the same set of factual circumstances.   All of Plaintiff's claims stem from the termination of her housing assistance.   Importantly, this is not merely an attempt to relitigate the merits of her termination; instead, Plaintiff also asserts various civil rights violations, negligence, defamation, and a violation of 42 U.S.C. § 1983.   All of those claims, however, result from the termination of her assistance or actions taken in connection with the termination of her assistance.   Thus, even though the claims here are nominally different from those brought before, they arise from the same facts, and the first prong of res judicata is satisfied.

The second prong of Minnesota's res judicata test requires that the claims involve the same parties or their privities.   That prong is clearly satisfied because it is an action by Plaintiff against Metro HRA.   There is some ambiguity in that the party named in the complaint is Metropolitan Council HRA Management Association, but Plaintiff also incorrectly named "Metropolitan Council Management Association" in the state court action as well.   *Jackson I*, 27-CV-09-7012, at *2.   Nevertheless, the Court finds that the second prong of the res judicata test is satisfied because the parties are certainly the same in both actions.

The third inquiry requires the Court to determine whether there was a final adjudication. The operative question is whether the prior adjudication was on the merits and with prejudice. Under Minnesota law, where a court purporting to enter judgment on the merits lacks subject-matter jurisdiction, such judgment is void and lacks preclusive effect.   *Olaf v. Krisak*, No. A07-0951, 2008 WL 2649502, at *3 (Minn. Ct. App. July 8, 2008) (citing *Matson v. Matson*, 310 N.W.2d 502, 506 (Minn. 1981).   In order for a judgment to be "on the merits," the court

rendering judgment must have authority to hear the claims at issue.  Whether the state court in *Jackson I* had authority to hear Plaintiff's case is jurisdictional.  *Mowry,* 565 N.W.2d at 719 ("The district court's authority to decide an appeal from an administrative body's quasi-judicial decision is a jurisdictional matter.").  Thus, the district court did not have jurisdiction to hear the challenge to the merits of the termination, but did have jurisdiction over the other substantive claims in the complaint.  A decision to dispose of a case based on lack of subject-matter jurisdiction "does not constitute an adjudication on the merits and should therefore be made without prejudice."  *Olaf,* 2008 WL 2649502, at *3 (citing *Hauser v. Mealey*, 263 N.W.2d 803, 808 (Minn. 1978)).  It follows, then, that regardless of how the state court classified its decision, the Court's determination turns on the functional reality of the state court proceedings.

In *Jackson I*, the district court found that Plaintiff's lawsuit was procedurally flawed in that Plaintiff was required to appeal Defendant's decision to terminate Section 8 benefits to the Minnesota Court of Appeals, rather than file a lawsuit in district court.  *Id.* at * 5-6.  Accordingly, the state court was correct in determining that it did not have jurisdiction to re-examine the facts surrounding the termination or the termination's propriety, but that lack of jurisdiction was confined only to the review of housing assistance termination.

Despite that procedural fault, the court went on to address Plaintiff's claims on the merits and dismissed each with prejudice.  *Id.* at *6-8 ("In the interests of judicial economy, the allegations in Plaintiff's Complaint will be addressed, all of which fail substantively.").  This Court finds that the state court did have subject-matter jurisdiction over the claims of negligence, due process, and retaliation.  *See Gulf Offshore Co. v. Mobil Oil Corp*, 453 U.S. 473, 477-78 (1981) (citing *Charles Dowd Box Co. v. Courtney*, 368 U.S. 502, 507-08 (1962) ("The general principle of state-court jurisdiction over cases arising under federal laws is straightforward: state

courts may assume subject-matter jurisdiction over a federal cause of action absent provision by Congress to the contrary or disabling incompatibility between the federal claim and state-court adjudication.").   This doctrine of concurrent jurisdiction empowers state courts to hear claims based on federal law, such as in *Jackson I*.

Further, Minnesota law provides for challenges to terminations of "Section 8 housing assistance on various procedural grounds."   *Loving*, 2009 WL 294289, at *4 (citing *Carter v. Olmstead County Hous. & Redev. Auth.*, 574 N.W.2d 725, 729 (Minn. Ct. App. 1998)).   Those challenges to the procedural or constitutional infirmities of a PHA's actions are not insulated from judicial review.   *Id.*   The state court action represents such a challenge, and thus, the Court finds that the state court did have jurisdiction to determine whether, for example, Plaintiff was denied due process in the termination of her benefits.   Because the court had jurisdiction, and because the court engaged in a discussion of the merits of Plaintiff's claims, the Court finds that a Minnesota court would give *Jackson I* preclusive effect as to any claim that could have been brought based on the factual circumstances surrounding the termination of her Section 8 housing assistance.

The final prong of the res judicata inquiry is whether the estopped party had a full and fair opportunity to litigate the claims.   The Court finds that Plaintiff had such an opportunity. *See Hanson v. Friends of Minn. Sinfonia*, No. A03-1061, 2004 WL 124429, at *4 (Minn. Ct. App. June 8, 2004) (finding a full and fair opportunity to litigate and applying res judicata where a litigant opposed summary judgment).   Indeed, Plaintiff was advised of all the hearings that lead to the termination of her housing assistance, she was allowed to oppose summary judgment in the state court, and she had the opportunity to timely file an appeal in the state court. Accordingly, she had a full and fair opportunity to litigate her claims.

After a complete review of the doctrine of res judicata, the Court concludes that Minnesota courts would give *Jackson I* preclusive effect as to each of Plaintiff's claims. Accordingly, the Court recommends entry of judgment on all of Plaintiff's claims based on the doctrine of res judicata.

### C.     Substantive Claims

Alternatively, Plaintiff's claims all fail substantively.  In evaluating the merits of each claim despite the doctrine of res judicata's applicability,[6] the Court will discuss each cause of action individually.  As discussed above, however, the Court will not resurrect an argument from the rubble of a voluminous record where a party has failed to meet its burden of bringing forth facts necessary to support or oppose summary judgment.

### 1.     "Complaint" One: Negligence/Defamation, Libel, and Slander

This portion of Plaintiff's complaint addresses two distinct theories of liability.  Plaintiff alleges that Defendant negligently terminated her housing assistance because Defendant knew or should have known that Plaintiff did not "skip out" of her unit and that Defendant failed to exercise administrative duties.   Second, Plaintiff alleges defamation because Defendant inaccurately wrote information which caused "stress, humiliation, and loss of a potential home in Chicago and homelessness."  (Am. Compl. ¶ 3.)

---

[6] The doctrine of res judicata is equitable in nature.  *Youngstown Mines Corp v. Prout*, 124 N.W.2d 328, 340 (Minn. 1963).  Because it is an equitable doctrine, it "is not rigidly applied, and the central inquiry is whether its application would work an injustice on the party against whom it is asserted."  *MinnComm Util. Const. Co. v. City of La Crescent*, No. A10-1534, 2011 WL 2175852, at *1 (Minn. Ct. App. June 6, 2011) (citing *Hauschildt*, 686 N.W.2d at 837)).  Indeed, it should be "applied in light of the facts of each individual case." *Larsen v. Mayo Found.*, Civ. No. 99-1726, 2000 WL 34449781, at *3 (D. Minn. Aug. 23, 2000) (citing *R.W. v. T.F.*, 528 N.W.2d 869, 872 n.3 (Minn. 1995)).  Here, the Court will address the merits of Plaintiff's claims because:  (1) Plaintiff is pro se and, thus, unskilled in the law; and (2) charges of discrimination based on race or disability, if true, are some of the gravest of allegations and must be uncovered and corrected when possible.

### a.   Negligence

To establish liability for negligence, Plaintiff must prove four essential elements:  "(1) the existence of a duty of care; (2) breach of that duty; (3) that an injury was sustained; and (4) that breach of duty was the proximate cause of the injury."  *Ansari v. NCS Pearson, Inc.*, Civ. No. 08-5351 (JRT/JJG), 2009 WL 2337137, at *4 (D. Minn. Jul. 23, 2009) (affirming and adopting the report and recommendation of the magistrate judge).  Plaintiff's claim fails.

As to the first element of the cause of action, Plaintiff has failed to establish any duty owed her by Defendant.  Plaintiff alleges in her Amended Complaint that Defendant failed to exercise its "administrative duties," but the record is devoid of an explanation of that duty or proof that it existed.  While Defendant certainly had some duties to administer the Section 8 voucher program, Plaintiff rests on the bare assertions that Defendant failed to exercise that duty.  Such reliance on allegations is insufficient to defeat summary judgment.  *Ciszewski v. Engineered Polymers Corp.*, 179 F. Supp. 2d 1072, 1099 (D. Minn. 2001) (Tunheim, J.).  Because Plaintiff has offered no facts in support of the purported duty Defendant owes, summary judgment on Plaintiff's claim of negligence is appropriate.

### b.   Defamation

To make out a prima facie case for defamation, Plaintiff must prove:  "(1) the defamatory statement is communicated to someone other than the plaintiff, (2) the statement is false, and (3) the statement tend[s] to harm the plaintiff's reputation and lower [the plaintiff] in the estimation of the community."  *Westfield Ins. Co. v. Robinson Outdoors, Inc.*, Civ. No. 10-151 (JRT/JJG), 2011 WL 5593171, at *6 (D. Minn. Nov. 17, 2011) (quoting *Bahr v. Boise Cascade Corp.*, 766 N.W.2d 910, 919-20 (Minn. 2009) (internal quotations omitted)).  Judgment against

Plaintiff should be entered on this count because in addition to being barred by res judicata, it is barred by the statute of limitations.

Where a federal court is examining the merits of a cause of action based on state law, it applies the state's statute of limitations. *Deretich v. City of St. Francis,* 149 F.3d 1187, 1998 WL 327207, at *2 (8th Cir. June 19, 1998) (unpublished table decision) (per curiam) ("[W]here the underlying cause of action is based on state law. . . state law dictates the appropriate statute of limitations as well as the commencement of an action.") (quotation omitted). Minnesota provides for a two-year statute of limitations. Minn. Stat. § 541.07. An action for defamation accrues on the date that the allegedly defamatory statement was published to a third party. *Hayes v. Blue Cross Blue Shield of Minn., Inc.*, 21 F. Supp. 2d 960, 977-78 (D. Minn. 1998) (Tunheim, J.) (citing *Wild v. Rarig*, 234 N.W.2d 775, 794 & n.21 (Minn. 1975) (per curiam)).

Plaintiff's defamation claim appears to stem from the comment in Plaintiff's file made in 2007 that she "skipped out of her unit." Plaintiff claims Virginia Hance, a Metro HRA employee, recorded that comment in her file in June 2007 and it was the basis for Plaintiff's termination. This action was commenced in June 2010, three years after the allegedly defamatory statement was published. Thus, the cause of action for defamation is time-barred.

### 2. Counts Two, Ten, and Twelve: Violation of Section 8 Statutes and Regulations

Plaintiff asserts three causes of action based on the statutes and regulations governing Section 8. Not only are these claims barred by res judicata, judgment should be entered because there is no private right of action under the statute. *Hill v. Grp. Three Hous. Dev. Corp.*, 799 F.2d 385, 394-95 (8th Cir. 1986); *see also Banks v. Dallas Hous. Auth.*, 271 F.3d 605, 611 (5th Cir. 2001) (finding no private right for § 1437f claims of unsuitable housing quality standards). Instead, Congress intended to allow the Department of Housing and Urban

Development ("HUD") to enforce Section 8's mandates.  *Hill*, 799 F.2d at 394-95 (quoting *Phelps v. Hous. Auth.*, 742 F.2d 816, 821 (4th Cir. 1984) ("Apart from the obvious lack of any affirmative statutory language indicating a Congressional intention to allow private remedial suits, the statute is replete with indications of an intention to entrust HUD with the means and responsibility for effective enforcement.")).  Further, as to the alleged violations of 24 C.F.R. § 982.304 and 42 U.S.C. § 3544, Plaintiff has offered no support for the allegations.

Because § 1437f does not provide any private right of action, and because Plaintiff has offered no evidence in support of her claims, the Court recommends judgment be entered against Plaintiff on counts two, ten, and twelve.[7]

### 3.    Counts Three, Five, Six, and Nine: Title VI of the Civil Rights Act of 1964

The Court recommends judgment be entered against Plaintiff on all claims arising under the Civil Rights Act of 1964.  Plaintiff asserts claims arising under Title VI based on disparate impact, retaliation, and disparate treatment.  While the Title VI claims are not barred by the statute of limitations, as Defendant argues, Plaintiff has failed to demonstrate that termination of her assistance was based on anything but legitimate motives.

---

[7] Briefly, Plaintiff has failed to offer a factual basis for any of these claims.  Count Two alleges a violation of 42 U.S.C. § 1437f(5)(A), which provides for review of a participating family's income "not less than annually."  While Plaintiff does not address the merits of any claim in opposition to this motion, she asserts, as framed in support of earlier motions to compel, that Defendant violated her rights by evaluating her income upon reinstatement.  Plaintiff's position is inconsistent with the statute and regulation.  § 1437f(5)(A); 24 C.F.R. § 982.516(a) ("The PHA must conduct a reexamination at least annually"); § 982.516(b) ("At any time, the PHA may conduct an interim reexamination of family income and composition.").

Further, Plaintiff has offered no evidence in support of Count Ten, which alleges a violation of 24 C.F.R. § 982.304, a non-discrimination provision, other than that she is a member of a protected class as an African American woman.  Finally, Plaintiff has not offered any evidence in support of Count Twelve, which alleges that Defendant failed to comply with 42 U.S.C. § 3544.

a.      **Statute of Limitations**

Defendant directs the Court to 24 C.F.R. § 1.7(b), which requires that complaints "be filed not later than 180 days from the date of the alleged discrimination, unless the time for filing is extended by the responsible Department official or his designee." Defendant contends that Plaintiff's Title VI claims are barred by this 180-day limit. Defendant misapplies the regulation. This regulation addresses administrative complaints to HUD. *See Blackshear Residents Org. v. Romney*, 472 F.2d 1197, 1198 (5th Cir. 1973). Accordingly, this is an administrative limitation, rather than a judicial limitation.

Instead, this Court applies Minnesota's personal injury statute of limitations. Because Title VI does not contain a statute of limitations period, the Court looks to the "most analogous state law and appl[ies] the statute of limitations contained therein." *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 801-02 (8th Cir. 2002) (citing *Wilson v. Garcia*, 471 U.S. 261, 267 (1985) (superseded in part by 28 U.S.C. § 1658)).[8] In *Faibisch*, the Eighth Circuit decided that Title VI and Title IX claims were analogous to §§ 1981 and 1983. *Id.* at 802 (citing *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 617 (8th Cir. 1987)). The Supreme Court has characterized §§ 1981 and 1983 as personal injury statutes. *See Goodman v. Lukens Steel Co.*, 482 U.S. 656, 661-62 (1987). Accordingly, the Court applies Minnesota's six-year statute of limitations, applicable to personal injury actions, to causes of action arising under Title VI. *Egerdahl*, 72 F.3d at 618 (citing *Taylor v. Regents of Univ. of Cal.*, 993 F.2d 710, 712 (9th Cir. 1993) (holding that Title

---

[8] In 1990 Congress passed a "catch-all" statute of limitations. Pub. L. No. 101-650, Title III § 313(a), 104 Stat. 5114 (codified as amended at 28 U.S.C. § 1658 (2006)). The federal limitations period applies only to federal rights created after the enactment of the catch-all limitation. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004) ("We conclude that a cause of action 'arises under an Act of Congress' enacted after December 1, 1990 – and therefore is governed by § 1658's 4-year statute of limitations – if plaintiff's claim against defendant was made possible by a post-1990 enactment."). Title VI was enacted as a part of the Civil Rights Act of 1964; accordingly, the Court does not apply the catch-all provision.

VI claims are governed by the same limitations period as § 1983 claims)); *see also* Minn. Stat. 541.05 (statute of limitations).

Plaintiff filed this lawsuit in June 2010. The first termination occurred in 2007, and thus, every action complained of falls within the limitations period.

**b.      Count Three:  Intentional Disparate Treatment/Disparate Impact Effects; Civil Rights Act of 1964**

Plaintiff alleges discrimination by both disparate treatment and disparate impact. Disparate treatment is discussed in Part II.C.3.d, *infra*, where the Court addresses the Civil Rights Act generally.   Any claim of disparate impact is insufficient in the Title VI context. *Mumid v. Abraham Lincoln High Sch.*, 618 F.3d 789, 794 (8th Cir. 2010) (citing *Alexander v. Sandoval*, 532 U.S. 275, 280-81 (2001)) (holding that proof of disparate impact is insufficient under Title VI).   Instead, a Title VI claim requires actual intentional discrimination.   *Id.* Accordingly, Plaintiff's allegations of disparate impact fail.[9]

**c.      Count Five:  Retaliation; Civil Rights Act of 1964**

To demonstrate a prima facie case of retaliation, a plaintiff must show simply that an entity receiving federal funds retaliated against him or her because of complaints about alleged discrimination.  *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 181 (2005).  The Court reserves its substantive discussion of retaliation claims to Part II.C.5, *infra*, because it is more properly discussed in terms of retaliation in violation of the Fair Housing Act.

---

[9] Even if Plaintiff could pursue a Title VI claim on the basis of disparate impact, she has failed to identify any policy or practice that would support her claim.  Thus it fails on the merits, too.   *See, e.g.*, *Bennett v. Nucor Corp.*, 656 F.3d 802, 817 (8th Cir. 2011) (requiring identification of a facially neutral policy or practice with a disparate effect on a protected class to demonstrate a violation of Title VII of the Civil Rights Act of 1964); *see also Fuller*, 161 F.3d at 519 (citing *Hankins v. Temple Univ.*, 829 F.2d 437, 438, 440-43 (3d Cir. 1987) (applying the same analysis to Title VII and Title VI claims)).

### d.      Count Six:  Disparate Treatment; Civil Rights Act of 1964

While Plaintiff's claims under the Civil Rights Act are timely, they fail on the merits.  It is well settled that "Title VI generally permits recovery of damages for intentional discrimination."  *Fuller v. Rayburn*, 161 F.3d 516, 518 (8th Cir. 1998) (citing *Lane v. Pena*, 518 U.S. 187, 191 (1996)).  To establish a prima facie case of intentional discrimination under Title VI, the "complaining party must demonstrate that his/her race, color, or national origin was the motive for the discriminatory conduct."  *Thompson ex rel. Buckhanon v. Bd. of the Spec. Sch. Dist. No. 1 (Minneapolis)*, 144 F.3d 574, 581 (8th Cir. 1998) (citing *Brantley v. Indep. Sch. Dist. 625*, 936 F. Supp. 649, 657 n.16 (D. Minn. 1996)); *see also* 42 U.S.C. § 2000d.

The Eighth Circuit applies the *McDonnell Douglas* burden shifting analysis to Title VI cases.  *See Freeman v. Fahey*, 374 F.3d 663, 666 (8th Cir. 2004) (citing *Fuller*, 161 F.3d at 518). Under *McDonnell Douglas*, once a plaintiff has established a prima facie case, the burden shifts to the defendant to demonstrate a legitimate, nondiscriminatory motive for its actions. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Upon a defendant's showing of a legitimate reason for its actions, the burden shifts back to the plaintiff to prove that the legitimate reason was a pretext.  *Id.* at 804-05.  Notably, before the burden shifts even once, a plaintiff must make out a prima facie case of discrimination sufficient to trigger the burden-shifting analysis.

Here, Plaintiff fails to make out a prima facie case.  As an African-American, Plaintiff is undoubtedly in a protected class.  *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 482 (8th Cir. 2009). Apart from that protected status, Plaintiff has failed to offer any evidence in support of her claim of discrimination.  Plaintiff makes bald assertions that Defendant discriminated against her in making its adverse decision, but simply terminating assistance, absent a nexus between

termination and her protected status, is not discriminatory.  Indeed, the Civil Rights Act does not codify a *preference*, but rather a *protection*.  This Court is bound to grant summary judgment if the record lacks "(a) direct evidence of discriminatory intent or (b) indirect evidence creating an inference of discriminatory intent under the *McDonnell Douglas* burden-shifting framework." *Gallagher v. Magner*, 619 F.3d 823, 827 (8th Cir. 2010).  Accordingly, the Court need not shift the burden to Defendant to require it to demonstrate a legitimate, nondiscriminatory purpose for its actions.  Because Plaintiff has failed to demonstrate that Defendant's termination of her federal housing assistance was motivated by discriminatory animus, her claims under the Civil Rights Act of 1964 fail, and the Court recommends that judgment be entered against her on Count Six.

### 4.        Count Seven:  Americans with Disabilities Act

Plaintiff next complains of discrimination based on the Americans with Disabilities Act ("ADA").  The ADA provides:  "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.[10]

As a prerequisite to relief under this statute, there must be evidence that the complainant is disabled.  An individual is "disabled" under the ADA if he or she suffers from an impairment that substantially limits a major life activity.  *Albertson's v. Kirkingburg*, 527 U.S. 555, 564-65 (1999) (citation omitted); *see also* 42 U.S.C. § 12101(2) ("The term 'disability' means, with respect to an individual – (A) a physical or mental impairment that substantially limits one or

---

[10] Plaintiff cites to 42 U.S.C. § 12101, which sets out Congress's findings and the purpose of the ADA.  The section of the ADA that refers to discrimination by public entities such as Defendant, however, is found at § 12132.

more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . .").  The only disability-related evidence in the record is:  (1) Plaintiff considered herself disabled; (2) Plaintiff claims to have applied for SSI; and (3) Plaintiff relayed the name of a physician to Defendant, but when Defendant contacted the physician to verify any disability, the physician did not respond.  (Reetz Aff. ¶ 40.)  Because Plaintiff has not established that she is disabled or, if she is disabled, that Defendant treated her differently based on her disability, she has failed to establish a prima facie case under the ADA.  Accordingly, the Court recommends judgment be entered against her on this count.

### 5.      Counts Eight and Nine:  Fair Housing Act

Plaintiff claims Defendant violated the Fair Housing Act ("FHA") by terminating her assistance without grounds and intentionally refusing to rent a home to her.  Plaintiff further claims that Defendant's employees Reetz and Sheppeck coerced and intimidated her.  The FHA prohibits an entity receiving federal funding from, essentially, denying housing based on race, color, religion, sex, familial status, or national origin.

Here, again, the FHA prohibits disparate treatment, disparate impact, and retaliation. Summary judgment on a disparate treatment claim is warranted if "the plaintiff cannot produce either (a) direct evidence of discriminatory intent or (b) indirect evidence creating an inference of discriminatory intent under the *McDonnell Douglas* burden shifting framework."  *Gallagher*, 619 F.3d at 831 (footnote omitted).  The Court applies a three-step analysis when evaluating a disparate impact claim.  The Court first determines whether Defendant's actions resulted in "a disparate impact upon protected classes compared to a relevant population."  *Id.* at 833 (citation omitted).   Then the burden shifts to Defendant to prove that its policy had a legitimate, nondiscriminatory purpose.  *Id.* at 834 (citation omitted).  Finally, the burden shifts back to

Plaintiff to demonstrate "a viable alternative means" "to achieve the legitimate policy objective." *Id.* (internal quotation marks and citation omitted).  As for the retaliation claim, Plaintiff must first prove that she was "exercise[ing] or enjoy[ing] a right granted or protected by the FHA." *Id.* at 838 (citing 42 U.S.C. § 3617) (other citations omitted).

Frankly, Plaintiff has offered no evidence in support of her claims.  Plaintiff relies on her assertions that her assistance was terminated without justification and her own conclusions that she was discriminated against.  Plaintiff asserts she was denied equal opportunity to participate in the housing choice program.  The record is devoid of any evidence evincing discriminatory conduct in connection with Defendant's termination of Plaintiff's assistance, nor is there evidence that Plaintiff was engaged in any protected activity.  Summary judgment is warranted here, not only because Plaintiff has not offered evidence in support of her claims, but also because it appears as though Defendant afforded Plaintiff extra opportunities to redeem her housing assistance.  Accordingly, the Court recommends dismissal of Counts Eight and Nine.

### 6.      Count Eleven: Conspiracy Against Rights

Plaintiff next alleges "conspiracy against rights" under 18 U.S.C. § 241.  The Supreme Court has been "reluctant to infer a private right of action from a criminal prohibition alone," and the Court will not do so here.  *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) (citing *Cort v. Ash*, 422 U.S. 66, 80 (1975)).  Instead, the Court construes this claim as one for civil conspiracy.  Although there is a cause of action for civil conspiracy authorized by a federal civil conspiracy statute and common law, the Court considers them together because they share a common element, which is fatal to Plaintiff's claim.

To make out a prima facie case of civil conspiracy against rights under 42 U.S.C. § 1985(3), a plaintiff must prove:

> (1) the defendants conspired, (2) with the intent to deprive them, either directly or indirectly, of equal protection of the laws, or equal privileges and immunities under the laws, (3) an act in furtherance of the conspiracy, and (4) that they or their property were injured, or they were deprived of exercising any right or privilege of a citizen of the United States.

*Barstad v. Murray County*, 420 F.3d 880, 887 (8th Cir. 2005).  Common law conspiracy requires "a combination of persons to accomplish an unlawful purpose or lawful purpose by unlawful means."  *Lipka v. Minn. Sch. Emps. Ass'n, Local 1980*, 537 N.W.2d 624, 632 (Minn. Ct. App. 1995).  Recovery for civil conspiracy at common law requires an underlying tort.  *D.A.B. v. Brown*, 570 N.W.2d 168, 172 (Minn. Ct. App. 1997).

Again, Plaintiff has simply failed to provide any evidence of the above-enumerated elements.  Perhaps Plaintiff claims that, in their administrative capacity of carrying out the Section 8 program, Defendant's employees conspired together to deprive Plaintiff of her rights.  If that is her argument, it fails.  The Eighth Circuit has held:  "Because a corporation and its agents are a single person in the eyes of the law, a corporation cannot conspire with itself."  *Id.* (citing *Cross v. Gen. Motors Co.*, 721 F.2d 1152, 1156 (8th Cir. 1983); *accord Albert v. Dungarvin Minn., Inc.*, No. A07-2436, 2009 WL 511015, at *4 (Minn. Ct. App. Mar. 2, 2009) (citation omitted).  The *Barstad* court went on to hold that "[a]n exception arises when the agents were, at the time of the conspiracy, acting beyond the scope of their authority for their own benefit."  *Barstad*, 420 F.3d at 887 (citing *Garza v. City of Omaha*, 814 F.2d 553, 556 (8th Cir. 1987)).  Absent such proof, however, a corporation may not conspire with itself.  *Id.*  Because Plaintiff has failed to demonstrate the first element of civil conspiracy, the Court recommends dismissal of this count.

### 7.      Count Thirteen:  Civil Rights Violations under 42 U.S.C. § 1983

Plaintiff's last explicit cause of action is violation of § 1983.  Section 1983 provides relief for individuals in the event that a state actor violates a specific individual right.  For Plaintiff to survive summary judgment, she must "raise a genuine issue of material fact as to whether (1) [Defendant] acted under color of state law, and (2) the alleged wrongful conduct deprived [Plaintiff] of a constitutionally protected federal right.  *Mann v.Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (citing *Cooksey v. Boyer*, 289 F.3d 513, 515 (8th Cir. 2002).  Notably, § 1983 does not create substantive rights.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citing *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979)).  Instead, it allows an individual to vindicate the infringement of rights elsewhere conferred.  *Id.*  A predicate to success on a § 1983 claim is proof that Plaintiff was deprived of a constitutionally protected right.  *See Parks v. City of Horseshoe Bend, Ark.*, 480 F.3d 837, 840 (8th Cir. 2007) (citing *Cooksey*, 289 F.3d at 516).

While Plaintiff does not explicitly state it, the Court presumes Plaintiff's § 1983 claim turns on the above-discussed violations of any of the federal rights discussed.  As explained in greater detail above, Plaintiff has failed to establish a deprivation of any protected federal right arising under the Constitution or the laws of the United States.  Even assuming Defendant acted under the color of law in administering the Section 8 housing program, Plaintiff has not demonstrated any deprivation of her rights.  Accordingly, Plaintiff's § 1983 claim fails.

### 8.      Unspecified Claim:  Infliction of Emotional Distress

On each page of Plaintiff's Amended Complaint, she alleges that Defendant's actions caused fear, stress, humiliation, anxiety, pain, and mental anguish, or some combination thereof.  The Court notes that these types of damages are the hallmark of claims of intentional or

negligent infliction of emotional distress.  Thus, while Plaintiff does not explicitly plead or refer to either common law tort, the Court will construe her Amended Complaint to assert such claims.

### a.        Intentional Infliction of Emotional Distress

To succeed on a claim of intentional infliction of emotional distress, Plaintiff must prove (1) the conduct was extreme and outrageous; (2) the conduct was intentional or reckless; (3) the conduct caused emotional distress; and (4) the emotional distress was severe.  *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 438-39 (Minn. 1983).  Plaintiff has failed offer any facts that Defendant's conduct, even if wrongful, was extreme or outrageous.  Indeed, the conduct must be "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community."  *Id.* at 439 (citing *Haagenson v. Nat'l Farmers Union Prop. & Cas. Co.*, 277 N.W.2d 648, 652 n.3 (Minn. 1979)).  Even viewed in the light most favorable to her, Plaintiff has failed to demonstrate any atrocity committed by Defendant.  Accordingly, any potential claim for intentional infliction of emotional distress fails.

### b.        Negligent Infliction of Emotional Distress

Negligent infliction of emotional distress requires, in addition to the four elements of standard negligence, that Plaintiff was in the zone of physical danger created by Defendant's negligence, that she reasonably feared for her own safety, and that she suffered severe emotional distress with attendant physical manifestations.  *Engler v. Ill. Farmers Ins. Co.*, 706 N.W.2d 764, 767 (Minn. 2005) (quotation omitted).  Plaintiff has failed to prove the elements of negligence and failed to prove that any of Defendant's actions caused any physical manifestations of emotional distress.  Accordingly, any potential claim for negligent infliction of emotional distress fails.

**III.     Recommendation**

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.     Defendant's First Motion for Summary Judgment (ECF No. 83) be **GRANTED**; and

2.     **JUDGMENT BE ENTERED ACCORDINGLY**.


Dated: May 16, 2012                                    _s/ Jeanne J. Graham_____
                                                         JEANNE J. GRAHAM
                                                         United States Magistrate Judge


**NOTICE**

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **June 1, 2012**.  A party may respond to the objections within fourteen (14) days after service thereof.  Any objections or responses shall not exceed 3,500 words.  The district judge will make a de novo determination of those portions of the Report and Recommendation to which objection is made.  The party making the objections must timely order and file the transcript of the hearing unless the parties stipulate that the district judge is not required to review a transcript or the district judge directs otherwise.