UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| NADIA JACKSON,<br>Plaintiff,<br><br>v.<br><br>METROPOLITAN COUNCIL HRA MANAGEMENT ASSOCIATION,<br><br>Defendant. | Civil No. 10-2370 (JRT/JJG)<br><br>**MEMORANDUM OPINION AND ORDER AFFIRMING ORDER OF THE MAGISTRATE JUDGE** |

Nadia Jackson, 3224 Sixth Street North, Minneapolis, MN 55412, plaintiff *pro se*.

Mary G. Dobbins, **LANDRUM DOBBINS LLC**, 7400 Metro Boulevard, Suite 100, Edina, MN 55439, for defendant.

From July 2003 to July 2007, plaintiff Nadia Jackson was a participant in the Housing Choice Voucher ("HCV")[1] Program administered by defendant Metropolitan Council HRA Management Association ("the Metro HRA"). This case arises from the Metro HRA's decision to terminate Jackson's HCV. Jackson alleges discrimination (under the Fair Housing Act, Americans with Disabilities Act, and other statutes) and defamation, among other claims. Presently before the Court is Jackson's appeal of an order by Magistrate Judge Jeanne J. Graham, which denied Jackson permission to amend for punitive damages and declined to issue an evidentiary ruling regarding Jackson's

---

[1] The HCV is administrated locally by public housing agencies and funded by the U.S. Department of Housing and Urban Development. The program allows tenants to find their own housing and use the voucher to pay a portion of their rent. 24 C.F.R. § 982.1(a)(1)-(2).

attempts to deem certain items admissible at trial.  Because Jackson has failed to raise a prima facie case of entitlement to punitive damages, and because the evidentiary ruling Jackson seeks would be premature, the Court will overrule Jackson's objections and affirm the Magistrate Judge's order.

## BACKGROUND[2]

### I. FIRST TERMINATION OF HCV

Jackson was a participant in the HCV program administered by the Metro HRA.  Jackson chose to use her HCV to rent an apartment from landlord Thomas Grant beginning on July 1, 2005.  (Affidavit of Beth Reetz ¶ 3, Ex. B at 12, Jan. 13, 2012, Docket No. 86.)[3]  As part of the HCV program, Jackson signed a "Statement of Responsibilities" acknowledging her responsibility to give written notice to the Metro HRA and her landlord sixty days prior to moving from her unit.  (*Id.*, Ex. D at 18, 21.)

On June 15, 2007, Jackson's Metro HRA housing coordinator, Virginia Hance, received a telephone call from Grant reporting that Jackson had vacated her apartment.  (*Id.* ¶ 8, Ex. E at 22.)  The Metro HRA claims that Jackson did not notify them, as required, prior to moving.  (*Id.* ¶¶ 7-9.)

---

[2] The Court outlines here the facts that appear in the record, noting wherever there is a factual disagreement that is apparent from the briefing and the submitted exhibits.  The Court is mindful that, at this stage in the proceedings, it must take all facts alleged by Jackson for which there is evidence in the record as true.  *See Shetka v. Kueppers, Kueppers, Von Feldt & Salmen*, 454 N.W.2d 916, 918 n.1 (Minn. 1990).

[3] Although the Court cites to the Beth Reetz affidavit throughout much of this Order for the purposes of clarity, the Court notes that Jackson has submitted many of the same exhibits.  (*See* Jackson Decl., Exs. A-P, Nov. 14, 2011, Docket No. 72.)

Hance tried to call Jackson on June 15, 2007, at the phone number she reported on her Recertification Sheet, but it was disconnected and the Metro HRA allegedly had no forwarding information.  That same day, Hance submitted a housing assistance termination recommendation to her supervisor, Mary Dooher, based on Jackson's failure to give proper written notice to both the Metro HRA and her landlord before she moved out of her apartment.  (*Id.* ¶ 9, Ex. E at 22, Ex. F at 23.)  Dooher subsequently approved termination of Jackson's housing assistance on June 18, 2007.  (*Id.*, Ex. E at 22.)

On June 21, 2007, Jackson requested a hearing to challenge the termination.  (*Id.*)  On July 17, 2007, the hearing was held before Hearing Officer Wendy Hagen.  (*Id.* ¶ 12, Ex. H at 1.)  At the hearing, Jackson admitted that she moved out on June 30, 2007, because of the poor condition of her apartment, but denied moving earlier than that date.  (*Id.*, Ex. H at 2-3, 15.)  She also claimed that, on April 30, 2007, she had faxed a notice to the Metro HRA stating that she would move by June 30, but that the fax machine failed and the message was not delivered.  (*Id.*, Ex. H at 2.)  In addition, Jackson produced a fax cover sheet to the Metro HRA dated May 7, 2007, that she claimed enclosed a June 30 move-out notice; the Metro HRA stated that it did not receive this fax.  (*Id.*, Ex. H at 2-3.)[4]  Officer Hagen concluded that, although Jackson had told the Metro HRA and Grant that she intended to move, Jackson had not provided the full sixty days' written notice that was required.  (*Id.*, Ex. H at 1-4.)  Specifically, Officer Hagen found that Jackson first told the Metro HRA of her plans to move on May 23, 2007, and that Jackson had

---

[4] The Court notes that a May 7 fax would not provide a full sixty days' notice.  Moreover, Jackson was required to give notice to both her landlord and the Metro HRA prior to moving.

moved on June 15, 2007. (*Id.*, Ex. H at 3-4.) Accordingly, Officer Hagen upheld the Metro HRA's decision to terminate Jackson's housing assistance. (*Id.*, Ex. H at 4.) Jackson did not appeal the decision to the Minnesota Court of Appeals. (*Id.* ¶ 13.)

## II.   REINSTATEMENT AND RECERTIFICATION

After her HCV termination, Jackson continued to challenge the termination by writing several letters to the Metro HRA. (*Id.* ¶ 14.) Beth Reetz of the Metro HRA agreed to meet with Jackson on February 29, 2008. (*Id.* ¶ 15.) Based upon Jackson's presentation at the meeting – namely, her contention that she had not moved from the unit on June 15, 2007, and continued to receive mail there after that date – Reetz decided to reinstate Jackson's assistance. (*Id.*; Jackson Decl. re Mot. to Amend, Ex. F at 2, Nov. 14, 2011, Docket No. 72-1.) Reetz indicated in an e-mail that Jackson "had sufficiently proven her case and that the HRA had been incorrect in its . . . termination action." (*See* Def.'s Mot. Dismiss, Ex. 2 at 8.) It is unclear what evidence Jackson presented to convince Reetz that Officer Hagen's decision was incorrect. On February 29, 2008, the Metro HRA reinstated Jackson's housing assistance. (Reetz Aff. ¶ 16, Ex. K at 10.)

On February 29, 2008, Jackson completed a Recertification Information Sheet as part of her reinstatement. (*Id.* ¶ 17, Ex. I at 1-5.) Therein, she did not disclose any income other than Minnesota Family Investment Program ("MFIP") income, and answered "no" to the question "Have you or any member of your household worked in the last twelve months?" (*Id.* ¶ 17, Ex. I at 2.) Jackson also signed a Metro HRA Statement of Responsibilities, wherein she reiterated that the income information she

provided was accurate.  (*Id.* ¶ 18, Ex. J at 6-9.)  The Metro HRA issued Jackson a new HCV.  (*Id.* ¶ 19, Ex. K at 10.)[5]

### III.   SECOND TERMINATION OF HCV

As Jackson continued to look for a place to rent, the Metro HRA sent her an extended voucher and Request for Tenancy Approval ("RTA") form on August 22, 2008.  (*Id.* ¶ 25.)  On August 25, 2008, the Metro HRA received a completed RTA from landlord Rebecca Merdan, seeking approval to rent Jackson an apartment in Brooklyn Park, Minnesota.  (*Id.* ¶ 26, Ex. M at 12-13.)

On August 27, 2008, Merdan faxed to the Metro HRA a copy of the 2007 Schedule C to Jackson's Federal Income Tax Form 1040.  (*Id.* ¶ 28.)  The form showed $19,926 of net income to Jackson for "Hairdressing" (*Id.* ¶ 28, Ex. O at 15), income which Jackson did not report to the Metro HRA (*id.* ¶ 28., Ex. I at 2-3).

---

[5] The voucher term expired on July 1, 2008.  (*Id.* ¶ 19.)  Despite locating three potential apartments, Jackson did not obtain housing by the July 1 deadline.  (Reetz Aff. ¶ 22, Ex. K at 10.)  After talking with Jackson on August 20, 2008, Reetz extended her voucher to October 20, 2008, writing in her notes dated August 20, 2011 that Jackson "clearly tried diligently" to find housing.  (*Id.* ¶ 23, Ex. K at 10.)

As a condition of her extension, Reetz required that Jackson write a letter to the Metro HRA acknowledging that she understood there would be no further extensions of her voucher.  (*Id.* ¶ 23, Ex. K at 10, Ex. L at 11.)  Jackson alleges that, during this conversation, Reetz also requested that that Jackson not request to port her file "to any other jurisdiction outside of Metro HRA."  (Am. Compl. ¶ 8, Oct. 3, 2011, Docket No. 65.)  Reetz denies that she ever required Jackson to agree that she would not port her voucher because, under federal regulations, the Metro HRA must permit a participant to port if they meet the applicable criteria.  (Reetz Aff. ¶ 24.)  Reetz's notes dated August 20, 2011, make no mention of this alleged requirement that Jackson agree not to port her voucher.  (*Id.*, Ex. K at 10.)

Crystal Sheppeck of the Metro HRA recommended that Jackson's HCV be terminated for failing to accurately and completely report her hairdressing income. (*Id.* ¶ 29, Ex. P at 16.)  In a letter[6] dated September 8, 2008, Sheppeck informed Jackson that the Metro HRA was terminating her housing assistance. (*Id.* ¶ 30, Ex. Q at 17.)  The letter also informed Jackson of her right to an informal hearing to challenge the decision. (*Id.*)  Jackson alleges that by requesting that she submit to this informal hearing, as opposed to conducting an "informal review," the Metro HRA employees discriminated against her. (Am. Compl. ¶¶ 9-10, Oct. 3, 2011, Docket No. 65.)

Moreover, Jackson denies receiving the September 8 letter.[7]  It may have been sent to an address where Jackson no longer resided.[8]  Apparently unaware that the Metro HRA had terminated her housing assistance, and having been denied housing by Merdan based on her criminal history (Reetz Aff., Ex. N at 14, Ex. P at 16), Jackson submitted an RTA on September 17, 2008 for a residence in Minneapolis, Minnesota. (Am. Compl. ¶ 12; Def.'s Mot. Dismiss, Ex. 3 at 18-20.)  Jackson seems to allege that the Metro HRA employees retaliated against her because this address was out of the jurisdiction of the Metro HRA and therefore would require the porting of her voucher. (*See* Am. Compl.

---

[6] The letter was addressed to "Nadia Jackson 749 Lyndale Pl Minneapolis MN 55411." (Reetz Aff., Ex. Q at 17.)  This is the same address that Jackson provided in a letter to the Metro HRA dated August 20, 2008, which states that she was living at the Drake Shelter. (*Id.*, Ex. L at 11.)  However, despite a heading stating that the letter would be sent by certified mail, no certified mail receipt listing the recipient was included with the September 8th letter. (*Id.*, Ex. Q at 17.)

[7] In a letter dated September 22, 2008, Jackson denied receiving any letter or certified letter. (Reetz Aff., Ex. R at 18.)

[8] In the letter dated September 22, 2008, Jackson listed her address as "Nadia Jackson People Serving People 614 S. 3rd Street # 615." (Reetz Aff., Ex. R at 18.)

¶ 12.) However, it appears that the Metro HRA decided to terminate Jackson's assistance prior to the submission of the Minneapolis RTA.

On September 22, 2008, Sheppeck received a letter from Jackson requesting a hearing regarding her termination. (Reetz Aff. ¶ 31, Ex. R at 18.) Therein, Jackson also explained that she did not believe she had violated any rules because she had begun working as a hairdresser in July of 2007, when she was not an HCV participant. (*Id.*, Ex. R at 18.)[9] In response, Sheppeck wrote a letter to Jackson on September 24, 2008, informing her that the Metro HRA would provide a hearing on October 24, 2008. (*Id.* ¶ 32, Ex. S at 19.) After some exchanges back and forth, Jackson apparently chose not to attend the hearing, nor did she ask the Metro HRA to reschedule it. (*Id.* ¶ 37; Def.'s Mot. Dismiss, Ex. 5 at 31.) Consequently, the Metro HRA did not pay housing assistance on Jackson's behalf after July 2007. (Reetz Aff. ¶ 2.)

## ANALYSIS

### I.   STANDARD OF REVIEW

The standard of review applicable to an appeal of a Magistrate Judge's order on nondispositive pretrial matters is extremely deferential. *Roble v. Celestica Corp.*, 627 F. Supp. 2d 1008, 1014 (D. Minn. 2007). The Court will reverse such an order only if it is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Minn. L.R. 72.2(a). This "clearly erroneous" standard applies to motions to amend for

---

[9] The Court notes, however, that in her recertification on February 29, 2008, Jackson answered "no" to the question "Have you or any member of your household worked in the last twelve months?" (Reetz Aff. ¶ 17, Ex. I at 2.)

punitive damages pursuant to Minnesota Statute § 549.191.  *See, e.g.*, *Ansari v. NCS Pearson, Inc.*, No. 08-5351, 2009 WL 2337137, at *12 (D. Minn. July 23, 2009).

## II.  PUNITIVE DAMAGES

Jackson first objects to the Magistrate Judge's ruling that she is not entitled to claim punitive damages.  Minnesota law allows punitive damages "only upon clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others."  Minn. Stat. § 549.20, subd. 1(a).  A party cannot claim such damages upon commencement of the action; rather, a party must move to amend after filing, properly alleging the legal basis and including affidavits showing the factual basis.  Minn. Stat. § 549.191.  "[I]f the court finds prima facie evidence in support of the motion, the court shall grant the moving party permission to amend the pleadings to claim punitive damages."  *Id.*  "Prima facie evidence is that evidence which, if unrebutted, would support a judgment in that party's favor."  *McKenzie v. N. States Power Co.*, 440 N.W.2d 183, 184 (Minn. Ct. App. 1989).

When deciding whether Jackson has established a prima facie case, "[t]he Court makes no credibility rulings, and does not consider any challenge, by cross-examination or otherwise, to the plaintiff's proof."  *Berczyk v. Emerson Tool Co.*, 291 F. Supp. 2d 1004, 1008 n.3 (D. Minn. 2003).  However, "the function of the trial court is to do more than 'rubber stamp' the allegations in the motion papers"; thus, the Court must determine if there is evidence in the record to support the plaintiff's prima facie case.  *Shetka v. Kueppers, Kueppers, Von Feldt & Salmen*, 454 N.W.2d 916, 918 n.1 (Minn. 1990).

Jackson provided four main bases for her contention that defendant deliberately disregarded her rights.  First, she argues that the Metro HRA should not have terminated her HCV in 2007 after her landlord reported she had moved out without providing notice.  Second, she claims that the Metro HRA should not have recommended terminating her HCV in 2008 in response to the disclosure of unreported income.  Third, she contends that the Metro HRA should not have required her to go through recertification upon her reinstatement to the HCV program – when she allegedly provided false information – because the Metro HRA had wrongly terminated her housing assistance in the first instance.  Finally, she argues that an informal hearing challenging the HCV termination in 2008 was not required because, at that time, she was merely an applicant for HCV housing and not a participant in the program; this challenge appears to claim that the Metro HRA provided her with too much process before her final HCV termination.

Jackson's objections to the Magistrate Judge's order largely repeat these four allegations.  In essence, Jackson asserts that she is entitled to claim punitive damages because the Metro HRA violated her rights.  Establishing a prima facie case for punitive damages requires more than assertions that a defendant violated the law, however.  Jackson must provide a **factual basis**, pointing to specific alleged facts, to suggest that the Metro HRA acted with deliberate disregard of her rights and was not simply careless or negligent.  *See* Minn. Stat. § 549.191; *Hern v. Bankers Life Cas. Co.*, 133 F. Supp. 2d 1130, 1135 (D. Minn. 2001); *Jensen v. Walsh*, 623 N.W.2d 247, 251 (Minn. 2001).

Jackson has failed to plead prima facie evidence that would support a judgment that the Metro HRA deliberately disregarded her rights.  Even assuming that the first

termination of Jackson's voucher was improper, Jackson has failed to identify facts suggesting that this termination – which was based on her landlord's allegations and was upheld by Officer Hagen – was caused by more than a misunderstanding by the Metro HRA about when Jackson gave notice and moved. Furthermore, Jackson has not clearly explained to this Court **why** this termination was improper, nor has she alleged a version of events suggesting that she provided sixty days' notice to the Metro HRA. Jackson also fails to raise any facts suggesting that subsequent decisions made by Metro HRA, such as terminating her voucher because of unreported income, support an award of punitive damages. Accordingly, after a careful review of the evidence presented, the Court concludes that the Magistrate Judge did not "clearly err" in denying Jackson's request to amend for punitive damages.

### III.    EVIDENTIARY RULING

Jackson next objects to the Magistrate Judge's refusal to consider her request to admit into evidence pleadings from a former lawsuit. The Magistrate Judge denied Jackson's motion because her request would be better handled as a motion in limine or in connection with a motion for summary judgment. (Order at 7, Docket No. 80.) The Court will affirm the Magistrate Judge's order because it is premature for the Court to make such an evidentiary ruling.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, the Court **OVERRULES** plaintiff's objections [Docket No. 81] and **AFFIRMS** the Magistrate Judge's Order dated December 6, 2011 [Docket No. 80].

DATED: June 25, 2012  
at Minneapolis, Minnesota.

                                                                  _____s/ John R. Tunheim_____  
                                                                      JOHN R. TUNHEIM  
                                                             United States District Judge