**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

| | |
|---|---|
| NADIA JACKSON, | Civil No. 10-2370 (JRT/JJG) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER ADOPTING THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE** |
| METROPOLITAN COUNCIL HRA MANAGEMENT ASSOCIATION, | |
| Defendant. | |

Nadia Jackson, 3224 Sixth Street North, Minneapolis, MN 55412, plaintiff *pro se*.

Mary G. Dobbins, **LANDRUM DOBBINS LLC**, 7400 Metro Boulevard, Suite 100, Edina, MN 55439, for defendant.

Plaintiff Nadia Jackson ("Jackson") brings this action against defendant Metropolitan Council HRA Management Association ("the Metro HRA"). Jackson was a participant in the Housing Choice Voucher ("HCV")[1] Program administered by the Metro HRA. This action arises from the Metro HRA's decision to terminate Jackson's HCV. As a result of the termination of her voucher, Jackson brings twelve causes of action, including discrimination (under the Fair Housing Act, Americans with Disabilities Act, and other statutes) and defamation. The case is now before the Court on Jackson's

---

[1] Administrated locally by public housing agencies and funded by the U.S. Department of Housing and Urban Development, the HCV program allows tenants to find their own housing and use the voucher to pay a portion of their rent. 24 C.F.R. § 982.1(a)(1)-(2).

objections to the May 17, 2012 Report and Recommendation ("R&R") issued by United States Magistrate Judge Jeanne J. Graham which recommended that the Court grant the Metro HRA's motion for summary judgment. After careful *de novo* review of the Magistrate Judge's R&R, *see* 28 U.S.C. § 636(b)(1)(C); D. Minn. LR 72.2(b), the Court will overrule Jackson's objections, and adopt the R&R in its entirety for the reasons stated below.

## BACKGROUND[2]

Jackson was a participant in the HCV program administered by the Metro HRA. Jackson used her HCV to rent an apartment from landlord Thomas Grant beginning on July 1, 2005. (Aff. of Beth Reetz ¶ 3, Ex. B at 12, Jan. 13, 2012, Docket No. 86.)[3] In June 2007, the Metro HRA terminated Jackson's HCV for her failure to give sixty days' written notice[4] to Grant and the Metro HRA before moving out of her apartment. (*Id.* ¶¶ 9-10, Ex. E at 22, Ex. F at 23.) Jackson requested a hearing challenging the termination, and the hearing officer upheld the Metro HRA's decision; Jackson did not

---

[2] The Court recites facts here only to the extent necessary to rule on Jackson's objections. A more thorough factual background is available in the Magistrate Judge's R&R (*see* R&R, May 17, 2012, Docket No. 95), this Court's order affirming the Magistrate Judge's order denying Jackson punitive damages request, *Jackson v. Metro. Council HRA Mgmt. Ass'n*, Civil No. 10-2370, 2012 WL 2395187, at *1-3 (D. Minn. June 25, 2012), and in the prior state case, *Jackson v. Metro. Council Hous. Redev. Auth.,* 27-CV-09-7012 (Minn. Dist. Ct. Mar. 3, 2010).

[3] Although the Court cites to the Beth Reetz affidavit throughout much of this Order for the purposes of clarity, the Court notes that Jackson has submitted many of the same exhibits. (*See* Jackson Decl., Exs. A-P, Nov. 14, 2011, Docket No. 72.)

[4] As part of the HCV program, Jackson signed a "Statement of Responsibilities" acknowledging her responsibility to give sixty days' written notice to both the Metro HRA and her landlord prior to moving from her unit. (Reetz Aff. ¶ 6.)

appeal the decision. (*Id.* ¶¶ 11-13.) Jackson continued to contact the Metro HRA, causing an employee of the Metro HRA to agree to meet with her in February 2008. (*Id.* ¶¶ 14-15.) At this meeting, the Metro HRA employee decided that Jackson's 2007 termination was "in error," causing the Metro HRA to reinstate Jackson to the program. (*Id.* ¶ 15, Ex. K at 10.) It is unclear why the Metro HRA employee believed the termination was in error, as it appears that Jackson did not provide the sixty days' written notice required prior to moving. In August 2008, the Metro HRA again terminated Jackson's HCV, this time for her failure to accurately and completely report her income as required by the HCV program. (*Id.* ¶¶ 29-30, Ex. P at 16.)[5] Jackson again challenged the termination and requested an informal hearing; HRA consequently scheduled an administrative hearing for October 24, 2008, which Jackson did not attend or reschedule. (*Id.* ¶ 37.)

In March 2009, Jackson filed a *pro se* complaint against the Metro HRA in the Minnesota state district court, raising claims based on the two terminations of her voucher. *Jackson v. Metro. Council Hous. Redev. Auth. (Jackson I)*, 27-CV-09-7012, at 3 (Minn. Dist. Ct. Mar. 3, 2010).[6] In her complaint, Jackson asserted claims that the Metro HRA was negligent, deprived her of due process, and retaliated against her when it

---

[5] Participants in the Section 8 Program are required to provide "true and complete" information regarding household composition and income. *See* 24 C.F.R. § 982.551(b)(2), (4). In August 2008, a potential landlord faxed to the Metro HRA a copy of the 2007 Schedule C to Jackson's Federal Income Tax Form 1040. (Reetz Aff. ¶ 28, Ex. O at 15.) This form showed $19,926 of net income to Jackson for "Hairdressing" that Jackson had not reported to the Metro HRA. (Reetz Aff. ¶ 28, Ex. O at 15.)

[6] Jackson's state court complaint, the state district court decision, and the state appellate court decision dismissing Jackson's appeal were submitted as exhibits to the Mary Dobbins affidavit. (Aff. of Mary G. Dobbins, Ex. 1, Jan. 13, 2012, Docket No. 84.)

decided to terminate her housing assistance.[7] *Id.* at 4. It is unclear from Jackson's complaint under what statutes, if any, Jackson brought these claims. The Metro HRA moved for summary judgment. *Id.* at 5.

In evaluating the summary judgment motion, the district court first found that Jackson lacked standing to challenge her voucher terminations in state district court. *Id.* at 5-6. The court determined that Jackson's proper remedy to challenge the termination of her voucher had been to file "a timely appeal [of the administrative decision to terminate her voucher] with the Minnesota Court of Appeals, not [to] file a separate complaint in district court." *Id.* at 5.[8]

In spite of this finding, "[i]n the interests of judicial economy," the court addressed the merits of Jackson's complaint and found that all of Jackson's claims failed. *Id.* at 6. The court noted as a preliminary matter that Jackson had provided a "litany of allegations" but did not dispute any of the evidence submitted by the Metro HRA. *Id.* at 5. In regard to Jackson's negligence claim, the court found that Jackson had not stated a claim because she provided no affirmative evidence that the Metro HRA had failed to comply with federal regulations or breached any legally recognized duty toward her. *Id.*

---

[7] The state district court noted that the claims Jackson asserted in her complaint were "difficult to decipher" but that negligence, deprivation of due process, and retaliation were the three she "appeared to assert." *Jackson I*, 27-CV-09-7012, at 4. The court found that neither the 2007 nor the 2008 termination of Jackson's voucher formed a basis for these legal claims. *Id.* at 8.

[8] By "taking evidence and hearing testimony," the state district court found that the Metro HRA had acted in a quasi-judicial capacity at the termination hearings and that "[j]udicial review of quasi-judicial decisions of administrative bodies is in the Court of Appeals and invoked by writ of certiorari." *Jackson I*, 27-CV-09-7012, at 5-6 (citing Minn. Stat. § 480A.06; *Ditz v. Dodge Cnty.*, 487 N.W.2d 237 (Minn. 1992)).

at 6.  As to her due process claim, the district court found that for both terminations of Jackson's voucher, the Metro HRA gave Jackson an opportunity for an informal hearing, and the fact that Jackson failed to appeal the 2007 termination or attend the 2008 hearing did not support a claim that Metro HRA had deprived Jackson of due process.  *Id.* at 7.  Finally, the court found that Jackson's retaliation claim failed to establish either that she was engaged in a "statutorily protected activity" or that there was a causal connection between such activity and the adverse action that the Metro HRA allegedly took against her.  *Id*. at 7-8.  The court thus dismissed each of Jackson's claims with prejudice and granted the Metro HRA's motion for summary judgment.  *Id*. at 8.  Jackson appealed that order, and the Minnesota Court of Appeals dismissed the appeal as untimely.  *Jackson v. Metro. Council Hous. Redev. Auth.*, A10-801 (Minn. Ct. App. June 1, 2010).

In June 2010, Jackson filed the complaint currently before this Court alleging twelve causes of action against the Metro HRA; Jackson then amended this complaint in October 2011.  (Compl., June 15, 2010, Docket No. 1; Am. Compl., Oct. 3, 2011, Docket No. 65.)  The Metro HRA moved for summary judgment.  (Def.'s Mot. Summ. J., Jan. 13, 2012, Docket No. 83.)  In an R&R addressing this motion, the Magistrate Judge determined that Jackson's claims failed for two main reasons: first, they were barred by the doctrine of res judicata, and second, substantively, Jackson was unable to establish a prima facie case for any of her claims.  (*See* R&R at 16, May 17, 2012, Docket No. 95.)  The Magistrate Judge thus recommended that this Court grant summary judgment for the Metro HRA.  (*Id*. at 29.)  Jackson filed objections to the Magistrate Judge's recommendation for summary judgment, essentially asserting three main arguments for

why the Court should not adopt the R&R: (1) res judicata does not apply, (2) summary judgment is inappropriate because the Metro HRA submitted an affidavit without notarization, and (3) summary judgment is not warranted on her negligence claim. (Pl.'s Objections to R&R, May 30, 2012, Docket No. 96). The Court will consider each of the objections in turn.

## ANALYSIS

The fundamental problem with Jackson's case, as described in more detail below, is that Jackson neither directly disputes any of the Metro HRA's facts nor asserts alternative facts that could create a genuine issue of material fact. In addition, Jackson's arguments reiterate issues and claims that the state court previously adjudicated on the merits. The Court will address Jackson's objections below and explain why they are insufficient to defeat summary judgment.

**I. STANDARD OF REVIEW**

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party demonstrates that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable

inferences that can be drawn from those facts. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

However, to survive summary judgment, Jackson – as the non-moving party – must do more than rest on the allegations made in her pleadings or on general statements of fact; she must show that specific facts exist which create a genuine issue for trial. *See, e.g.*, *Anderson*, 477 U.S. at 256. Without sufficient evidence to make out Jackson's claims, a trial is unnecessary and the Metro HRA, as the moving party, is entitled to summary judgment as a matter of law. *Id.* at 249.

## II. RES JUDICATA

Jackson first objects to the Magistrate Judge's recommendation that this Court find her claims against the Metro HRA barred by res judicata. Res judicata operates to bar subsequent litigation when "(1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties . . . (3) there was a final judgment on the merits; [and] (4) the . . . party had a full and fair opportunity to litigate the matter." *Hauschildt v. Beckingham,* 686 N.W.2d 829, 840 (Minn. 2004). All four elements must be satisfied for res judicata to apply. *Id.* In addition, the first suit must have been based on proper jurisdiction. *Lovell v. Mixon*, 719 F.2d 1373, 1376 (8th Cir. 1983). "Res judicata applies equally to claims actually litigated and to claims that could have been litigated in the earlier action." *Brown-Wilbert, Inc. v. Copeland Buhl & Co., P.L.L.P.*, 732 N.W.2d 209, 220 (Minn. 2007). When determining if res judicata applies, federal courts "must give the same preclusive effect to a state-court judgment as another

court of that State would give." *Parsons Steel, Inc. v. First Ala. Bank*, 474 U.S. 518, 523 (1986) (citing the Full Faith and Credit Act, 28 U.S.C. § 1738 (1976)).

Jackson seems to rest her argument that res judicata does not apply on two theories. First, because Jackson's claims raise federal questions, she argues that the state court did not have jurisdiction to decide these issues; second, she argues that under the Seventh Amendment, only facts tried by a jury are precluded from being reexamined. (Pl.'s Objections to R&R at 6.)[9]

### A. Preclusion of Federal Claims

The Court must first decide if res judicata applies even though this action involves federal claims.[10] It was unclear to what extent, if any, Jackson's state court claims were based on federal law. Although Jackson's federal complaint more clearly brings her claims under federal law,[11] Jackson's present claims of negligence, retaliation, and denial of due process are all based on the same factual circumstances and allegations as Jackson's state court claims of negligence, retaliation and denial of due process. Thus,

---

[9] Jackson's Seventh Amendment argument was not presented to the Magistrate Judge so the Court is not bound to address it; however, because courts construe *pro se* filings liberally, and because it is important to leave no doubts in Jackson's mind that the Court carefully reviewed her objections, the Court will address this argument.

[10] Although the Magistrate Judge found Jackson's claims barred by res judicata, because "charges of discrimination based on race or disability, if true, are some of the gravest allegations and must be uncovered and corrected when possible[,]" the Magistrate Judge evaluated the merits of each of Jackson's thirteen claims. (R&R at 16, n. 6.)

[11] In her claims of negligence, denial of due process, and retaliation, Jackson alleges that, through the 2007 and 2008 terminations of her voucher, the Metro HRA violated Jackson's rights under the Constitution and, among other statutes, the Fair Housing Act and the Civil Rights Act.

even if the claims in this action are not precisely the same as those raised in the state court, because they involve the same facts, the same parties, and arise from the same circumstances, Jackson should have raised them in her state court action. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 84-85 (1984) (holding that where a federal claim could have been litigated with claims brought in a state court proceeding, res judicata barred that party's subsequent federal civil rights action arising from the same circumstances which gave rise to the state court claims).

Jackson argues that she did not and could not have raised her current claims in the state court. However, in general, "[s]tate courts have jurisdiction to enforce rights arising under federal law." *Ademodi v. State*, 616 N.W.2d 716, 717 n.2 (Minn. 2000); *see also Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 477-78 (1981). Jackson has pointed to no cause of action she now raises that she could not have raised in state court, and the Court finds none. Moreover, Jackson brought the original state court action, and she cannot now complain that it was the improper forum in which to raise her claims. The Court thus concludes that all of the elements of res judicata are met in this case: the action that Jackson filed in state court involved the same set of factual circumstances as this action (the Metro HRA's terminations of Jackson's voucher), the same parties (Jackson and the Metro HRA), a final judgment on the merits, and a full and fair opportunity to litigate her state and federal claims. *See Hauschildt*, 686 N.W.2d at 840.[12]

---

[12] The Court also notes that because the Metro HRA's 2007 and 2008 administrative decisions, and Jackson's subsequent challenges to those decisions, involved the same parties and arose from the same factual circumstances as those which form the basis of Jackson's federal claims, the administrative decisions may also preclude at least some of Jackson's claims. *See*

(Footnote continued on next page.)

- 9 -

B.  **Seventh Amendment**

As to Jackson's objection based on the Seventh Amendment, Jackson seems to argue that because her state case was not tried before a jury, the state court's decision does not have preclusive effect. This legal theory is faulty and misapplies both the doctrine of res judicata and the Seventh Amendment. While it is true that under the Seventh Amendment, "no fact tried by a jury, shall be otherwise re-examined in any Court of the United States," Jackson's Seventh Amendment rights are not at issue here. *See* U.S. Const. amend. VII. The Seventh Amendment does not provide for an automatic right to have **any** fact examined by a jury, and, in this case, Jackson has no right to have her claims heard before a jury because she fails to set forth facts sufficient to defeat summary judgment. *See, e.g.*, *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) (finding that lack of a material fact question deprived the plaintiff of the right to a jury or bench trial). Because a state court's grant of summary judgment can serve as a basis for res judicata, the Court overrules Jackson's objection. *See Rick v. Wyeth, Inc.*, 662 F.3d 1067, 1069, 1072 (8th Cir. 2011).

_____
(Footnote continued.)

*Brinker v. Weinberger*, 522 F.2d 13, 15 (8th Cir. 1975). However, because the state court reviewed the merits of Jackson's challenge to the administrative decisions, this Court will only focus on the state district court decision in evaluating the application of res judicata to Jackson's current claims.

**III    AFFIDAVITS**

Jackson next objects to the Magistrate Judge's recommendation by alleging that the Metro HRA's summary judgment motion is not supported by admissible evidence. Specifically, Jackson contends that the Metro HRA's affidavits are inauthentic because they were submitted electronically, without being properly signed or notarized. Jackson also alleges that by submitting these documents to the Court without being properly authenticated – thus making them inadmissible evidence – the Metro HRA has committed acts of perjury and attorney misconduct.

The Court concludes that the Metro HRA's affidavits are sufficiently authenticated. The Electronic Case Filing Procedures in this District require parties electronically filing a document, including all notarized documents, to sign the document with "s/ Name" in lieu of an actual signature. *See* Elec. Case Filing Procedures Guide, Civil Cases at 11-12, http://www.mnd.uscourts.gov/cmecf/guides/Civil-ECF-Procedures-Guide.pdf (last visited Aug. 7, 2012). Under Federal Rule of Civil Procedure 56(e)(1), if a party fails to properly support an assertion of fact as required by Federal Rule of Civil Procedure 56(c), the court has discretion to give that party an opportunity to properly do so. In the R&R, the Magistrate Judge found that the Metro HRA did not electronically designate notarization on the affidavit of Beth Reetz and directed the Metro HRA to refile the affidavit within thirty days of the order, which the Metro HRA did. (*See* R&R at 9; Aff. of Beth Reetz, June 12, 2012, Docket No. 99.) In her objection, Jackson contends

this directive was improper and violated Rule 56(c)(1),[13] which states that a party who asserts facts as undisputed must properly support those facts with admissible evidence, such as an affidavit. The Court finds, however, that the Magistrate Judge merely – and properly – exercised discretion, pursuant to Rule 56(e)(1), in allowing the Metro HRA to refile the Reetz affidavit.[14]

Moreover, mindful of the standard for summary judgment, the Court notes that the substance of Jackson's objection was not to the facts asserted in the affidavit of Beth Reetz, but merely to a technical defect in the procedure by which it was admitted. Therefore, even if there were a continuing procedural defect with the affidavit, that flaw would not affect the outcome of this motion because Jackson has not asserted facts sufficient to defeat summary judgment. Indeed, Jackson does not specifically dispute any of the facts set forth in the Reetz affidavit, and summary judgment is proper in the absence of a genuine, material factual dispute.[15] *See* Fed. R. Civ. P. 56(a). Accordingly, the Court overrules Jackson's objection regarding the Reetz affidavit.[16]

---

[13] Jackson also alleges that the Magistrate Judge's directive violated the Minnesota Supreme Court Order ADM 10-8011 promulgating amendments to the e-filing rules of civil procedure, *see* http://www.mncourts.gov/Documents/0/Public/Clerks_Office/ADM108011-05242012.pdf, as well as Rule 5.06 of the Minnesota Rules of Civil Procedure. The Court finds otherwise. This action is in federal court where the Federal Rules of Civil Procedure apply, making Minnesota procedural rules inapplicable. Moreover, the Minnesota Supreme Court's Order ADM 10-8011 is not effective until September 1, 2012, and will only apply to all actions or proceedings going forward from that date.

[14] The Court additionally notes that, according to the Magistrate Judge, some of Jackson's own exhibits were "routinely accepted" despite their "apparent inauthenticity." (R&R at 3.)

[15] Jackson asserts that she doubts the credibility of the witness Beth Reetz and that this doubt creates a genuine issue of material fact. Jackson cites *Sartor v. Ark. Natural Gas Corp.*,

(Footnote continued on next page.)

## IV. NEGLIGENCE

Finally, Jackson argues that because the Metro HRA's evidence in support of summary judgment is based on the improperly authenticated affidavits, summary judgment on her negligence claim is improper. However, as discussed above, because the Metro HRA's affidavits are properly admissible evidence, this argument fails. Jackson's negligence claim additionally fails because, as discussed, it is barred by res judicata. Furthermore, as outlined below, Jackson's negligence claim fails because she does not establish a prima facie case.

Under Minnesota law, a plaintiff must establish four essential elements to prevail on a claim for negligence: "(1) the existence of a duty of care; (2) a breach of that duty; (3) an injury was sustained; and (4) breach of the duty was the proximate cause of the injury." *State Farm Fire & Cas. Co. v. Aquila, Inc.*, 718 N .W.2d 879, 887 (Minn. 2006) (quotation marks and citations omitted).

The problem with Jackson's negligence claim is illustrative of the defect in this entire action: in order to defeat summary judgment, Jackson must do more than make

_____
(Footnote continued.)

321 U.S. 620 (1944) to support an argument that where there is such doubt, a jury is entitled to observe the demeanor of the witness. This argument has no merit because (1) in making this allegation, Jackson does not produce any facts that would create a genuine doubt as to Beth Reetz's credibility, and (2) Jackson seems to base her general allegation of "credibility" on her argument that the unnotarized affidavit is inadmissible evidence, which the Court finds meritless.

[16] Jackson also alleges in her objection that, by allowing the Metro HRA time to refile its affidavit with proper authentication, the Magistrate Judge is "aiding and abetting" the Metro HRA in an unlawful act. The Court finds no merit in this allegation because, as described above, the Magistrate Judge properly exercised discretion.

conclusory allegations.  In asserting her negligence claim, Jackson "rests on the bare assertions" that the Metro HRA was negligent in exercising administrative duties without offering any supportive evidence or a clear definition of those duties.  (*See* R&R at 17; Am. Compl., ¶¶ 1-3.)  Accordingly, Jackson has failed to establish the existence of a duty of care or a breach of that duty.  The Court finds that Jackson has neither pled nor proffered evidence of a viable negligence claim and thus adopts the Magistrate Judge's recommendation for summary judgment.[17]

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, the Court **OVERRULES** the plaintiff's objections [Docket No. 96] and **ADOPTS** the Magistrate Judge's Report and Recommendation dated May 17, 2012 [Docket No. 95]. **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 83] dated January 13, 2012 is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  September 27, 2012       ____s/ John R. Tunheim____
at Minneapolis, Minnesota.       JOHN R. TUNHEIM
     United States District Judge

---

[17] As part of her negligence claim, Jackson alleges a violation of 42 U.S.C. § 1437(f)(5)(a), but this subsection does not exist and Jackson does not define what duty the Metro HRA breached.  (Am. Compl. at 1.)  Similarly, Jackson alleges a violation of 24 C.F.R. § 982.304 but has not asserted facts to show a violation of this regulation.  (*See id.* ¶ 28.)